UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GLAZER'S, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  SA-11-CV-977-XR |
| § | |
| MARK ANTHONY BRANDS INC. D/B/A § | |
| MIKE'S HARD BEVERAGE CO. § | |
| § | |
| *Defendant*. § | |
| § | |

**ORDER**

On this date, the Court considered Defendant Mark Anthony Brands' Motion to Compel Arbitration and to Dismiss Under Rule 12(b)(6) (docket no. 2), and the Response and Reply thereto. Defendant's motion to compel arbitration is GRANTED, and the case is DISMISSED.

**Background**

This case arises from the alleged violation of an alcohol distribution agreement. On February 24, 2000, Halo Distributing Company ("Halo") entered into a Wholesaler Appointment Agreement with Defendant Mark Anthony Brands ("MAB").[1]  Pursuant to the Agreement, Halo was given exclusive distribution rights for MAB malt beverages ("MAB Brands") in several counties in the San Antonio area.[2]  The Agreement includes a series of provisions detailing the conditions under which

---

[1]Halo is headquartered in San Antonio and is a distributor of malt beverages.

[2]Specifically, Halo was given the distribution rights for the following counties: Bexar, Atascosa, Wilson, Frio, Comal, Hays, Guadalupe, and Caldwell.  Plaintiff alleges that MAB Brands occupy a "unique position" within Halo's malt beverage portfolio, because they are considered beer for purposes of applicable laws and regulations, but differ significantly in

MAB can terminate the Agreement.  In relevant part, the Agreement provides that "Halo must obtain MAB's prior written consent to any change in ownership of Halo" and that MAB "shall have the right to terminate this Agreement immediately upon given written notice, without any obligation on MAB's part to follow the procedures provided [elsewhere in the agreement] . . . [if] Halo disposes of or effects a change in control in Halo's business or assigns this Agreement . . . ."[3]

       Plaintiff Glazer's Inc. alleges that on July 18, 2011, it set forth a proposal to purchase the

comparison to traditional beers and malt beverages.

> [3]Specifically, Section 8.2 of the Agreement states:
>
> Halo must obtain MAB's prior written consent to any change in ownership of Halo which would require Halo's notification to the Bureau of Alcohol, Tobacco and Firearms under 25 CFR 1.42 regarding Halo's Federal Basic Permit.  Such consent not to be unreasonably withheld as it relates solely to family estate planning for immediate family members.
>
> Def.'s Mot. to Compel Arbitration and Stay Litigation at Ex. 1.
>
> Section 9.1 of the Agreement states:
>
> If Halo ceases business operations with respect to MAB Products, Halo shall be considered to have terminated this Agreement effective as of the date operations ceased[.]
>
> *Id.*
>
> The Agreement further states under 9.5e:
>
> MAB shall have the right to terminate this Agreement immediately upon given written notice, without any obligation on MAB's part to follow the procedures provided [elsewhere in the agreement] . . . [if] Halo disposes of or effects a change in control in Halo's business or assigns this Agreement in violation of paragraph 8 of this agreement.
>
> *Id.*

operating assets of Halo's malt beverage distribution business.[4] Glazer's asserts that the assets to be purchased included the distribution rights for the MAB Brands, and that its offer was expressly conditioned upon the consent of all of Halo's malt beverage suppliers. Glazer's complaint states that on July 22, 2011, Halo countersigned Glazer's proposal and that this "Letter of Intent" contemplated that Glazer's and Halo would enter into a definitive Asset Purchase Agreement.

Glazer's states that on August 25, 2011, Halo sent a letter to MAB informing it that Halo had accepted Glazer's offer to acquire its distribution business. Halo requested that MAB inform Glazer's of any information that it would require in order to approve Glazer's as a distributor of the MAB Brands. According to Glazer's, on September 2, 2011, MAB responded that it would give "fair and full consideration" to approving the transfer, but that for the time being it was withholding consent. Glazer's states that MAB also requested that Glazer's provide additional information, and that Glazer's complied with the request and provided MAB with a comprehensive business plan and an application for consent to transfer distribution rights for the MAB Brands to Glazer's.

Glazer's states that on September 28, 2011, MAB notified Halo that it was continuing to refuse to consent to a transfer of the MAB Brands to Glazer's based on its conclusion that Glazer's sale volume projections for the MAB Brands were "grossly overstated." On October 4, 2011, Glazer's alleges that Halo sent a letter to MAB addressing all of MAB's concerns in detail. Glazer's complaint states that on October 20, 2011, MAB responded that it would not consent to a transfer of distribution rights to Glazer's.

On October 28, 2011, Glazer's and Halo signed an Asset Purchase Agreement in order to

---

[4]Glazer's is a licensed distributor of alcoholic beverages, including beer and other malt beverages.

finalize Glazer's purchase of substantially all of Halo's operating assets, including distribution rights. However, the Agreement specifically excludes from the definition of "Purchased Assets" any "Excluded Assets, and any nonassignable Contract to be transferred pursuant to Section 2.9" of the Agreement. Section 2.9 of the Agreement provides: "Nothing in this Agreement . . . shall be construed . . . to assign or transfer any Assumed Contract that is subject to a required consent to Glazer . . . unless and until such consent or approval shall have been obtained or condition satisfied." In addition, as part of the Asset Purchase Agreement, Halo and Glazer's entered into an Assignment of Claims, which specifically assigns to Glazer's all of Halo's claims against MAB.[5]

---

[5]The Assignment of Claims provides:

Assignor, hereby absolutely and unconditionally assigns, transfers, conveys and grants unto Glazer all rights, title and interest in and to any and, all claims of Assignor against Mark Anthony Brands (the "Supplier") under the Texas Beer Industry Fair Dealing Law (I'ex. Alco. Be's'. Code, Title 4, Ch. 102, Sub. D) (the "Act") relating, directly or indirectly, to Supplier's denying or delaying the approval of the transfer of Assignor's tights under any of its distribution, supply or territorial agreements or appointments with Supplier to distribute Supplier's Product Lines within the Territory (the "Distribution Rights ') to Glazer, or Supplier's withholding or delaying consent to the assignment, transfer and sale to Glazer of Assignor's Distribution Rights, including, without limitation, (i) all of Assignor's rights, title and interest in and to all agreements, instruments and other documents evidencing, or relating to Assignor's claims against Supplier; (ii) all of Assignor's right to receive compensation for the fair market value of the Assignor's business related to the Product Lines of Supplier, including but not limited to goodwill and going concern value; (iii) any other damages, costs, losses, expenses, obligations, attorney fees, court costs and other amounts under the Act; and (iv) any and all other claims, demands, causes of action against the Supplier, its affiliates, any guarantor or other third party relating to or arising from Assignor's claims against Supplier (collectively, the "Claims"). Notwithstanding anything to the contrary contained in this Section 1. the Claims shall exclude all claims relating to Assignor's Distribution Rights for the period prior to the Closing Date and the parties acknowledge and agree that Assignor shall bay the right to defend claims made by, or otherwise prosecute or pursue any counterclaims against, Supplier (and/or its Affiliates) for alleged breaches or defaults of Assignor pursuant to the Distribution Rights for all periods prior to the Closing Date to the extent that any such claims or counterclaims do not involve the Claims.

The closing of Glazer's purchase became effective on November 4, 2011. On November 4, 2011, MAB sent Halo a notice of termination. Citing sections 9.1 and 9.3 of the Wholesale Purchase Agreement, as well as Section 102.73(c) of the Texas Beer Industry Fair Dealing Law, MAB stated that as a result of Halo's sale of its assets, Halo "shall be considered to have terminated" the Agreement. MAB further stated that it "also intends to exercise its own rights to terminate pursuant to this letter."

On November 16, 2011, Glazer's filed this lawsuit alleging (1) violation of the Texas Beer Industry Fair Dealing Law; (2) interference with contract; and (3) interference with prospective business advantage. MAB moves to compel arbitration and to dismiss the action according to the arbitration provisions within the Wholesale Appointment Agreement. In the alternative, Defendant moves to dismiss for failure to state a claim under Rule 12(b)(6).

## Procedural History

Plaintiff filed its Petition and Application for Temporary Restraining Order against Defendant in the 408th Judicial District of the District Court of Bexar County. (Docket No. 1, Exh. 1). The State court entered a temporary restraining order on November 16, 2011 enjoining MAB from terminating the Whole Appointment Agreement or allowing anyone other than Glazer's to distribute MAB Brands. (Docket No. 1, Exh. 2). On November 15, 2011, the parties entered into a Rule 11 agreement that the TRO would remain in effect until further order of the court or arbitration panel. (*Id.*)

Defendant timely removed the case to this Court based on the Court's jurisdiction pursuant to 28 U.S.C. § 1332. (Docket No. 1). On November 23, 2011, Defendant filed a motion to compel

---

(Docket No. 7, Exh. 1)

arbitration and for the Court to dismiss the case. (Docket No. 2). Plaintiff filed a response on December 14, 2011 (docket no. 5), and Defendant filed its reply on January 3, 2012 (docket no. 7). Plaintiff filed a sur-reply on January 4, 2012 (docket no. 9), and Defendant filed a sur-reply on January 13, 2012 (docket no. 11)

I.   **Motion to Dismiss for Lack of Standing**

MAB argues that Glazer's lacks standing to challenge the transfer of the distribution rights because Glazer's has not shown that "MAB violated a legal duty owed to it." Glazer's responds that it suffered a direct injury as a result of MAB's alleged interference with its contractual relationship with Halo. Glazer's further argues that it has standing to pursue claims pursuant to the Texas Beer Industry Fair Dealing Law because Halo assigned to Glazer's all its causes of action against MAB, including all of its claims under the Texas Alcoholic Beverage Code.

To the extent MAB alleges that Glazer's lacks Article III standing, the Court disagrees. "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560-61). Particularized means "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

If proven, MAB's alleged interference with Glazer's agreement to purchase Halo, as well as MAB's alleged unlawful interference with Glazer's prospective business advantage, would give rise

to a concrete injury redressable by Glazer's request for injunctive relief. Moreover, Halo assigned to Glazer's all of its causes of action against MAB, including its causes of action under the Texas Beer Industry Fair Dealing Law. Accordingly, the Court concludes that Glazer's has standing to assert the causes of action alleged in its complaint.

## II.     Defendant's Motion to Compel Arbitration

Defendant moves to compel arbitration on two grounds: (1) pursuant to the terms of the Wholesale Appointment Agreement and the Federal Arbitration Act ("FAA")[6] and (2) pursuant to Section 102.77 of the Texas Beer Industry Fair Dealing Law. For the reasons stated below, the Court compels arbitration pursuant to the Wholesale Appointment Agreement.

### A.     Wholesale Appointment Agreement

#### 1.     *Legal Standard*

In considering a motion to compel arbitration under the Federal Arbitration Act ("FAA"), courts must engage in a two-step analysis. *Janvey v. Alguire*, 628 F.3d 164, 182 (5th Cir. 2010). The first step of the analysis is to determine whether "'(1) . . . there is a valid agreement to arbitrate the claims and (2) . . . [whether] the dispute in question fall[s] within the scope of that arbitration agreement.'" *Id.* at 182 (quoting *Sherer v. Green Tree Servicing*, 548 F.3d 379, 381 (5th Cir. 2008)). These determinations "'[are] generally made on the basis of ordinary state-law principles that govern the formation of contracts.'" *Torres v. S.G.E. Mgmt., L.L.C.*, 397 Fed. Appx. 63, 65 (5th Cir. 2010) (quoting *Morrison v. Amway Corp.,* 517 F.3d 248, 254 (5th Cir. 2008)). Importantly, any "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration."

---

[6] MAB correctly notes that the FAA applies here because the Agreement involves interstate commerce. Specifically, "MAB's office is in San Francisco, California and its products that are distributed in Texas are manufactured in various states.

*Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).  After finding the arbitration agreement to be valid, the court must continue to step two of the analysis by examining whether "'any federal statute or policy renders the claims nonarbitrable.'" *Janvey*, 628 F.3d at 182 (quoting *Sherer*, 548 F.3d at 381).  In the absence of a contrary federal statute, arbitration should be compelled in accordance with the FAA. 9 U.S.C. § 3.

   2.   *Analysis*

MAB seeks to compel arbitration pursuant to the terms of the Wholesale Appointment Agreement between it and Halo.  The Agreement includes a series of arbitration provisions, and states in relevant part:

> All controversies, disputes and claims of whatsoever nature and description between the parties hereto be settled by binding arbitration upon demand of either party in Halo's state in a neutral location and in accordance with the rules of the American Arbitration Association then in effect.

Glazer's argues that it cannot be compelled to arbitrate because it is not a party to the Agreement, and therefore is not bound by the arbitration provision.  MAB responds that "Glazer's is bound to arbitrate under the doctrine of 'direct-benefits estoppel' by which a nonsignatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."[7]

"[F]ederal courts have held that so long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration." *Sapic v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003).  The Fifth Circuit has noted that "[s]ix theories for binding a nonsignatory to an

---

[7]Def's Reply in Support of its Motion to Compel Arbitration, (Docket No. 11) (citing *In re Kellogg Brown & Root*, 166 S.W.3d 732, 739 (Tex. 2005).

arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Id.*

As noted, MAB argues that the direct-benefits estoppel theory is applicable in this case. Direct-benefits estoppel "'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006). "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from the contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex, Inc*., 620 F.3d 469, 472 (5th Cir. 2010).

Glazer's "embraced" the distribution agreement in both respects. All of Glazer's claims seek to enforce the Agreement or require reference to the Agreement. Glazer's specific causes of action are: (1) violation of Section 102.76 of the Texas Beer Industry Fair Dealing Law[8]; (2) interference with contract; and (3) interference with prospective business advantage. The issue underlying all

---

[8]Section 102.76 of the Texas Beer Industry Fair Dealing Law states:

(a) No manufacturer shall unreasonably withhold or delay its approval of any assignment, sale, or transfer of the stock of a distributor or all or any portion of a distributor's assets, distributor's voting stock, the voting stock of any parent corporation, or the beneficial ownership or control of any other entity owning or controlling the distributor, including the distributor's rights and obligations under the terms of an agreement whenever the person or persons to be substituted meet reasonable standards imposed not only upon the distributor but upon all other distributors of that manufacturer of the same general class, taking into account the size and location of the sales territory and market to be served.

TEX. ALCO. BEV. CODE § 102.76 (2012).

9

of the claims is whether MAB unreasonably withheld consent to transfer the distribution rights to Glazer's.[9] In resolving the claims, the Court cannot avoid reference to the Agreement.[10] Thus, although Glazer's did not bring a direct breach of contract claim, all of its claims require examination of Halo's distribution rights and MAB's termination rights under the Wholesale Appointment Agreement.

Glazer's is also seeking to obtain the direct benefits of the Agreement. If successful, Glazer's would receive the same benefits from the Agreement as Halo: exclusive distribution rights to MAB Brands. Had the Agreement between Halo and MAB not existed, Glazer's would have no claim to distribute MAB Brands. Accordingly, the very nature of Glazer's claim requires MAB's performance under the Agreement to be for Glazer's benefit. Having brought a claim seeking that MAB perform under the Agreement, Glazer's cannot avoid compliance with the remaining terms of the contract.

Having determined that Glazer's is bound by the arbitration provision, the Court now turns to the validity and scope of the provision. Glazer's does not challenge the validity of the arbitration clause. Instead, Glazer's argues that its claims fall outside the scope of the provision because the

---

[9]Specifically, Glazer's alleges that MAB is (1) "unreasonably withholding or delaying its approval of the transfer of distribution rights" in violation of the Texas Beer Industry Fair Dealing Law;" (2) "has intentionally interfered with" Glazer's and Halo's Asset Purchase Agreement by withholding consent of the transfer of distribution rights;" and (3) "has intentionally interfered with the relationship between Halo and Glazer's by continuing to refuse to consent to Halo's transfer of the right to distribute the MAB Brands."

[10]Glazer's assertion that it is raising a claim independent of the Agreement under the Texas Beer Industry Fair Dealing Law is unavailing. The statute governs relationships between manufacturers and distributors. To the extent that Glazer's and MAB's current relationship is that of manufacturer and distributor, nothing in the statute's provisions prevent enforcement of a valid arbitration clause in a distribution agreement.

Agreement only "allows for the arbitration of disputes between MAB and Halo, which pertain primarily to any attempts by MAB to terminate Halo as a distributor and MAB's election of certain contractual remedies in the event of termination." In accordance with the FAA, Texas courts "employ a strong presumption in favor of arbitration." *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (citing *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995)). When assessing whether the dispute falls within the scope of the arbitration clause, "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.*; *Prudential Sec. Inc.*, 909 S.W.2d at 899. Because the arbitration provision covers "[a]ll controversies, disputes and claims of whatsoever nature and description between the parties hereto," Glazer's assertion that MAB is unreasonably withholding consent to transfer distribution rights sufficiently falls within the scope of the provision.

      **B.**    **Texas Beer Industry Fair Dealing Law**

MAB argues that its relationship with Glazer's is governed by the Texas Beer Industry Fair Dealing Law, which allows certain disputes be submitted to arbitration at the request of either party. Section 102.77 of the Texas Beer Industry Fair Dealing Law states:

> (b) In the event that the manufacturer and the distributor are unable to mutually agree on whether or not good cause exists for cancellation under Section 102.74 of this code or on the reasonable compensation to be paid for the value of the distributor's business, as defined herein, the matter may, at the option of either the distributor or manufacturer, be submitted to three arbitrators, one of whom shall be named in writing by each party and the third of whom shall be chosen by the two arbiters so selected.

Tex. Alco. Bev. Code § 102.77 (2012).

Glazer's argues that its claim fall outside the statute's arbitration provision because it is limited to claims for termination of a distribution agreement or to the reasonable compensation to be paid for the value of the distributor's business, not to claims alleging unreasonable refusal to consent to the transfer of distribution rights. Glazer's contends that because it seeks an injunction pursuant to Section 102.76 of the Code, which concerns whether MAB unreasonably withheld consent to the transfer of the distribution rights and not whether it unreasonably terminated the Agreement, it cannot be compelled to arbitrate pursuant to the statute.

MAB responds that Glazer's cannot avoid arbitration by limiting its claims to whether MAB unreasonably withheld consent to the transfer of distribution rights. MAB argues that "[w]hether Plaintiff is entitled to any relief depends on the legality of MAB's termination of the contract [because] if MAB effectively terminated the Wholesaler Appointment Agreement, Glazer's is not entitled to the injunctive relief it seeks." MAB further argues that Glazer's cannot avoid arbitration by claiming that it only seeks injunctive relief because "Plaintiff has not, and never will, irrevocably forswear monetary relief . . . ."

Under the Code, "arbitration is applicable to only two narrow issues: (1) existence of good cause for contract cancellation, and (2) valuation of the terminated distributorship." *Cerveceria Cuauhtemoc Moctezuma S.A. de C.V. v. Mont. Bev. Co.*, 330 F.3d 284, 287 (5th Cir. 2003). Glazer's claim in this case is limited to whether MAB unreasonably withheld consent to transfer the distribution rights. Glazer's does not challenge whether good cause exists for cancellation of the contract; nor does it seek valuation of the terminated distributorship. As such, Glazer's claims fall outside the scope of the Code's arbitration provision.

**III.   Stay**

Defendant asks this Court to dismiss Plaintiff's complaint because all of Plaintiff's claims are subject to arbitration. In *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992), the Fifth Circuit acknowledged that the FAA states that the "court shall stay the trial of the action until the arbitration is complete," but held that this rule was not intended to limit dismissal of a case in the proper circumstance. *Id.* at 1164. The Court held that "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id.* (emphasis in original). In such circumstances, the Court reasoned, "retaining jurisdiction and staying the action will serve no purpose." *Id.* (quoting *Sea-Land Serv. v. Sea-Land of Puerto Rico*, 636 F. Supp. 750, 757 (D.P.R. 1986)). Thus, the Court held that the district court "acted within its discretion when it dismissed th[e] case with prejudice." *Alford*, 975 F.2d at 1164.

In later cases, the Court has noted, however, that dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice. *Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 & n.9 (5th Cir. 2003); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 679 (5th Cir. 1999) (holding that district court did not abuse its discretion by dismissing the case without prejudice in favor of arbitration).

Plaintiff has not moved the Court for a stay rather than dismissal, and Defendants request that the Court dismiss the action. Because the Court concludes that all of Plaintiff's causes of action are subject to arbitration, the Court will exercise its discretion and dismiss the case without prejudice.

**Conclusion**

Plaintiffs' claims are subject to a valid arbitration agreement. Therefore, Defendants' motion

to compel arbitration (docket no. 2) is GRANTED and the case is DISMISSED without prejudice.

Defendant's alternative Rule 12(b)(6) motion is DISMISSED AS MOOT.

      It is so ORDERED.

      SIGNED this 22nd day of June, 2012.

                                XAVIER RODRIGUEZ
                                UNITED STATES DISTRICT JUDGE